The opinion of the court was delivered by
Duncan, J.
The question arises on the will of Andrew Nebinger. The testator had two children, — a son and daughter, — and devises the premises in dispute to George, his son, in the following words: “To my son George, his heirs and assigns, to his and their only proper use and behoof for ever; provided always, nevertheless, that if the wife of my said son George, to wit, Anne Nebinger, should happen to survive him, my said son, then and in such case the said premises above described shall be and remain to and for the only proper use and behoof of the heiys or issue lawfully begotten on the body of the said Anne, (and of the children lawfully begotten on any other woman,) and their heirs and assigns for ever, as tenants in common, and not as jointenants; and, for want of such issue, the same shall enure to the issue lawfully begotten on the body of my daughter Catherine, inter *69 marriedrwith George Weller, and their heirs &nd assigns, tenants as aforesaid;” and another part of:¿his estate he devises as follows: “ Unto my'daughter Catherine, and to her children, lawfully begotten oh the body of her my said daughter Catherine, and their heirs and assigns for ever.” George entered on the death of his father, and of the term of -April', 1788, suffered a eommon recovery and transferred his title, which by mesne conveyances and assurances in law, is vested in the defendant. Jlnne, his wife, survived George, the devisee, who left issue of his body by his wife Jhine, six children, born after the.testator’s death, among whom is Robert, the plaintiff in this action. The plaintiff contends, that George Nebinger took by way of executory devise an estate in fee, to be divested on a particular event, — his death, his wife Jlnne surviving, — which event has happened; and that he, by virtue of the limitation in that event, becomes entitled to one sixth part, of the premises. The defendant contends, that George took an estate in tail, which is converted into a fee simple by the common recovery. This will is a very uncommon one, and drawn by a scrivener who had in the course of his business picked up some technical words, the exact meaning of which he did not understand.
But, on considering all the provisions of this will, we think the intention of the testator must have been, that George should take in fee subject to the limitation over to his children, on a particular event, — ftnne his wife surviving him, and that his children should take as tenants in eommon by purchase.
The provision that the children should take as tenants in common, and not as jointenants, shows distinctly, that the testator was contemplating something very different from an estate tail, because an estate tail, if there were sons, would vest wholly in the eldest son, to the exclusion of all the rest; and upon an estate tail there would neither be a jointenancy nor tenancy in common, and the words — for want of such issue, put it beyond all doubt that the testator used the words — heirs or issue lawfiilly begotten, not as words of limitation to give George .an estate tail, but to give such children a distinct and independent interest as tenants in common. This is an intent clearly, fully, and distinctly expressed in the will, that these children are persons designated to take as tenants in common, not by descent from their father, but a distinct interest by purchase. But, however strongly this intent is expressed, it would not be permitted to prevail, if it were at variance with any paramount general intent of the testator; and it is contended, that there is such paramount general intent; not that such paramount intent is expressed, or that it is inconsistent that this particular, intent should prevail, but because there is some absurdity in first providing for the event ,of George’s dying, -flnne his then wife surviving, and making provision for the children he might have by a future wife; and therefore the whole contingency *70 should be altered by introducing the word not; and, to be sure, this is a very simple operation, but this is a liberty not be taken with the will of any man, and certainly never will be taken to defeat his intention. The blindness of expression may be supplied by a construction favourable to the real meaning, the constant object of which is to support the intent; and, for this purpose, words of limitation should operate as words of purchase, — implication shall supply verbal omissions, — the letter shall give way, — every impropropriety of term shall be controlled by the general meaning, if that be clear and manifest. Chapman v. Brown and others, 3 Burr. 1634. But, here, to correct this alleged obscurity, you defeat the testator’s general intent, which certainly was, to give all the children of his son George an estate by purchase distributively, and not in succession; and to do what? to effectuate what intention I cannot see. But I can see an intention clearly expressed, which must not be defeated by a mere conjecture. For the manifest intention of the testator was, that all George’s children should take at the 'same time, and take equal shares. Now, it would be a singular conclusion, where each child was equally an object of the testator’s bounty, and was to have an equal share, to hold that every child’s share should be given up in the first, instance to the eldest son, and that he and his issue, as long as he had any, should hold it in exclusion of all the rest: for if George had not suffered a common recovery, the whole would have vested in his son TLn~ drew, as tenant in tail. There is no reason for making it an estate tail, by adding a word which the testator never used, and which would change the whole plan of the will, and for the sole purpose of converting that into an estate tail in the father, which would otherwise be according to the words he has used, and which was his distinctly expressed intent, distinct and separate estates to his children. There is one reason to be assigned, which would operate in the mind of the testator, and that is, that George should not take such an interest as would entitle his wife to dower, which she is not, on the construction we have put on this will. For where a fee, in its original creation,- is only to continue to a certain period, there the wife is endowable and the husband entitled to be tenant by the curtesy after that period: but whei’e the fee is devised in words importing a fee simple or tail absolute, but by subsequent words is made determinable on a particular event, if that event happens, the dower and curtesy cease with the estate to which it is annexed. Co. Litt. 241, a. And it is a singular coincidence, that when by limitation the estate went over to the female branch of the family, the husband of Catherine could not take as tenant by the curtesy, nor the wife of George be entitled to dower, for the devise over is not to Catherine herself, but to her issue lawfully begotten. I have avoided a reference to the numerous authorities, as to the effect of the issue taking as tenants in common, because they are all referred to in the very able opinion in The Lessee of Findlay v. *71 Riddle, 3 Binn. 139. That case clearly proves, that a limitation to issue, as tenants in common, is inconsistent with all idea of estate tail in the ancestor: for by the limitation to the heirs of the bod#, issue, or children as tenants in common, cannot be intended^iat succession of perso^i denominated by the law heirs: they e&nnot take by descent, bu£ must take as purchasers, and therefore the rule in Shelley’s case is not applicable.
The opinion of the court therefore is, that the judgment should be reversed, and judgment entered for the plaintiff on this special verdict.
Judgment reversed, and judgment entered forthe plaintiffin error*